Jorge ACEVEDO, Plaintiff,

v.

James A. FORCINITO, et al., Defendants.

Civ. A. No. 92–0172.

United States District Court,
D. New Jersey.

May 12, 1993.

Jorge Acevedo, pro se.

Ivan M. Sherman, County Counsel, County of Cumberland, Bridgeton, NJ, for defendants.

## ORDER

RODRIGUEZ, District Judge.

This matter is before the court on defendants'.motion for summary judgment under Fed.R.Civ.P. 56. For the reasons set forth below, the court denies the motion in part and grants the motion in part.

## I. BACKGROUND

Plaintiff, Jorge Acevedo, brings this action under 42 U.S.C. § 1983 alleging that defendants violated his civil rights during his twenty months of incarceration at the Cumberland County Jail. Acevedo, who is not conversant in English, claims that defendants denied him meaningful access to the courts by failing both to maintain an adequate law library and to provide a Spanish-speaking legal assistant. No longer incarcerated at the jail, plaintiff seeks monetary and injunctive relief.

Defendants Sheriff James A. Forcinito and the County of Cumberland now move for an order granting summary judgment. They assert that they did not violate plaintiff's constitutional rights, as the jail affords prisoners and detainees adequate law library facilities, satisfying the standard the Supreme Court announced in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). They further assert that the court should grant summary judgment on claims against the County of Cumberland insofar as Acevedo alleges vicarious liability or respondeat superior, theories unavailable under § 1983.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The entry of summary judgment is appropriate only when the court finds "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). Whether a fact is "material" is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a disputed fact exists that under the controlling substantive law might affect the outcome of the suit, entry of summary judgment is precluded. *Id.*

The moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the pleadings, discovery papers and affidavits, if any, which demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The burden then shifts to the nonmoving party to present affirmative evidence "from which a jury might return a verdict in his [or her] favor." Summary judgment will not be granted if the nonmoving party shows there is a genuine issue of fact requiring a trial. *Anderson*, 477 U.S. at 248, 257, 106 S.Ct. at 2514. In making its determination, then, the court's function is not to assess the truth of the matter upon its own weighing the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### B.

#### 1. Access to the Courts

It is well established that prisoners have a fundamental constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir. 1990). As one court has stated, it "is the most fundamental right [a prisoner] holds," *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir.1988), for all other rights of prisoners are illusory without it. *See Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir.1973). Access to the courts encompasses "all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." *Gilmore v. Lynch*, 319 F.Supp. 105, 111 (N.D.Cal.1970), *aff'd, Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (*per curiam*). These principles also apply to pre-trial detainees. *Martin v. Tyson*, 845 F.2d 1451 (7th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988).

In *Bounds,* the Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing · of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. Prison officials, under *Bounds,* have an affirmative duty to provide prisoners meaningful access to the courts. That duty does not require unlimited access to courts and counsel; the provision of reasonable access will suffice.

■ The Court's standard in *Bounds,* however, does not address the adequacy of a law library with respect to illiterate or non-English speaking prisoners. In some instances, even the most comprehensive law library might not, alone, provide meaningful access to the courts. *See Valentine v. Beyer,* 850 F.2d 951, 956–57 (3d Cir.1988); *Harrington v. Holshouser,* 741 F.2d 66, 69 (4th Cir. 1984); *Cruz v. Hauck,* 627 F.2d 710, 721 (5th Cir.1980). As the Fifth Circuit stated in *Cruz:*

> Although *Bounds* says that either an adequate law library *or* assistance from persons trained in the law may satisfy the fundamental constitutional right to access to the courts, the fundamental concern is still whether the inmates have *meaningful* access to the courts. Library books, even if "adequate" in number, cannot provide access to the courts for those persons who do not speak English or are illiterate.

*Cruz,* 627 F.2d at 721. This court agrees that for prisoners who cannot read or understand English, the constitutional right of access to the courts cannot be determined solely by the number of volumes in, or size of, a law library.

Here, defendants urge a strict application of *Bounds,* alleging that the provision of a law library, even to a non-English speaking prisoner, satisfies the duty of prison officials to provide meaningful access to the courts. There is no indication in *Bounds,* however, that the Court considered the issue of prisoner illiteracy or inability to understand English in the context of defining meaningful access to the courts. *See U.S. ex rel. Para–Professional Law Clinic v. Kane,* 656 F.Supp. 1099 (E.D.Pa.1987) (referring to *Smith v. Bounds,* 538 F.2d 541 (4th Cir. 1975); *DuPont v. Saunders,* 800 F.2d 8 (1st Cir.1986); *Cepulonis v. Fair,* 732 F.2d 1, 4–5 (1st Cir.1984)). Few courts, in fact, have addressed the issue of access to the courts for non-English speaking prisoners, and the Third Circuit has made no direct pronouncements on the subject.[1]

■ Here, the court finds that summary judgment should not be granted on plaintiff's claims against prison officials for monetary relief. The Court's primary concern in *Bounds* was the protection of prisoners' ability to petition the courts. *Bounds,* 430 U.S. at 823, 825, 97 S.Ct. at 1495, 1496. It would be wholly contrary to the spirit and purpose of *Bounds* to conclude that the provision of a law library afforded that protection for prisoners who cannot understand the language in which the books are written. Defendants do not dispute Acevedo's contention that they provided no Spanish-speaking persons to assist prisoners in their legal research. Clearly, *Bounds* requires some form of assistance to those for whom even the most comprehensive law library is of no avail.[2]

■ Defendants assert that plaintiff's filing of his complaint and the magistrate's subsequent denial of his request for the appointment of counsel are evidence of Acevedo's meaningful access to the courts. The court, however, cannot accept these arguments as sound. First, if the act of filing a complaint automatically disproved prisoners' allegations that prison officials denied them meaningful access to the courts, courts could never reach the merits of the claims. The

---

1. One court has noted that "[w]hen non-English speaking prisoners have asserted a denial of access to the courts based on a language barrier, the reported cases have dealt with the claim in a perfunctory manner." *Gomez v. Myers,* 627 F.Supp. 183 (E.D.Tex.1985) (citations omitted).

2. It is possible that defendants satisfy the *Bounds* standard with respect to English-speaking, functionally literate detainees and prisoners at the Cumberland County Jail. The record indicates that the jail has a system for granting prisoners access to the county law library upon their request, which plaintiff does not dispute.

filing of a complaint does not necessarily undermine a prisoner's claim that he or she was at one time denied the right of access to the courts. Second, in denying Acevedo's request for appointed counsel, the magistrate stated that it "expressed no opinion on the merits of plaintiff's case." [3] Finally, though plaintiff was represented by a public defender in his criminal proceedings, he did not benefit from the assistance of counsel in the civil actions he allegedly sought to present.

### 2. Claim Against Cumberland County

Defendants move for the entry of summary judgment on all claims against the County of Cumberland. They allege that because Acevedo makes no direct allegations against the county, he presumably bases the county's liability on a theory of vicarious liability or respondeat superior. Defendants claim, and the court agrees, that plaintiff fails to state a claim against the county because respondeat superior is a doctrine unavailable under § 1983.

The only allegations Acevedo presents in his amended complaint concerning the county defendant are as follows:

> Cumberland County is vested with the government and management of the Cumberland County jail and with the supervision and protection of the prisoners and detainees within the jail, including but not limited to operating said county jail in a safe and efficient manner, to ensure that all persons detained therein are provided with all their constitutional rights.

(Am.Compl. ¶ 3.) Beyond asserting the county's general duties relating to the jail, plaintiff makes no link between those duties and his own alleged harm. He fails to demonstrate a sufficient factual basis for holding the county liable for his allegedly denied access to the courts. The court therefore grants summary judgment on all claims against defendant Cumberland County.

### 3. Injunctive Relief

In *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Court held that a plaintiff does not have standing to obtain injunctive relief "absent a showing of real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111, 103 S.Ct. at 1670 (citation omitted). *See also Brown v. Fauver*, 819 F.2d 395 (3d Cir.1987). Injunctive relief, then, is wholly prospective, and the court must analyze standing to obtain prospective relief separately from standing to obtain retrospective relief. *See e.g., Dombrowski v. Pfister*, 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965) ("it is fundamental that 'injunctive relief looks to the future'").

Here, plaintiff does not allege that there is a real or immediate threat that defendants will harm him again. No longer incarcerated at the Cumberland County Jail, Acevedo lacks standing to assert claims for injunctive relief concerning the provision of meaningful access to the courts for those now housed at the facility. The court therefore grants summary judgment on all claims for injunctive relief.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED on this 11th day of May, 1993, that defendants' motion for summary judgment is **DENIED** on plaintiff's claims for monetary relief against defendant Sheriff Forcinito.

IT IS FURTHER ORDERED that summary judgment is **GRANTED** on all claims against defendant Cumberland County.

IT IS FURTHER ORDERED that summary judgment is **GRANTED** on plaintiff's claim for injunctive relief.

---

**3.** The court further notes that the magistrate, commenting on the lack of clarity of plaintiff's claims, denied the request for appointment of counsel based on plaintiff's original complaint. Acevedo has since amended his complaint pursuant to the court's order dated September 3, 1992.